2:17-cv-0440 WTL-MJD

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

CHRISTOPHER STEWARD
    Petitioner,
v.
BUREAU OF PRISONS
THOMAS R. KANE, DIRECTOR
    Respondent.

Civil Case No. _____
Underlying Case No. 1:16-CR-14-1-GNS
This is a new Civil Case
filing under the Administrative
Procedures Act. 5 U.S.C. § 702, 706

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION
2017 SEP 18 PM 4:48
SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PETITION FOR INJUNCTIVE RELIEF
### ADMINISTRATIVE PROCEDURES ACT

HERECOMES, Christopher Steward......Pro Se, asking this Honorable Court to grant him his Petition for Injunctive Relief, setting aside the current administrative decision rendered by the Bureau of Prisons (Unit Team) denying the Petitioner his rightful placement and allotment of time into halfway house, and home confinement, top which the Petitioner is entitled to under the Second Chance Act, pursuant to 18 U.S.C. § 3621 (b)(4)(B), 18 U.S.C. § 3624 (c) and 28 CFR § 570.20 and 570.21. Further that the court order the BOP (Unit Team) to review his allotment of time to halfway house and home confinement and grant him the full 12 months of halfway house and/or...... of home confinement due him pursuant to the above statutes and regulations. Lastly that the court recognize in its order that the BOP has abused its discretion in its decision.

### PERTINENT HISTORY OF THE CASE

Petitioner accepted a Plea Agreement on 5/3/2016 in which he plead guilt to 7 counts of the indictment; 21 U.S.C. § 843 (a)(3), acquiring possession of controlled substance by misrepresentation, fraud, deception and subterfuge; 21 U.S.C.§ 841 (a)(1) and 841 (B)(1)(C), distributing and dispensing controlled substance outside the course of professional medical practice, and distributing and dispensing a controlled substance outside et al count 2 and 3; 843 (a)(3) and 846, conspiracy to acquire possession of controlled substance et. al count 4 and 5; 841 (a)(1) 841 (b)(2) knowingly and intentionally distributing and dispensing controlled substance outside of professional medical practice and 18 U.S.C. § 1347 health care fraud. Petitioner was sentenced to 18 months on each count running concurrent on 3/20/2017. No appeal or collateral attack by § 2255 was filed.

## STATUTORY BACKGROUND

Under the Second Chance Act of 2007, approximately 17 -19 months before an inmate's probable release date, a unit team for each inmate meets to assess the length of time that the inmate will spend in a RRC (Halfway House) prior to his release from Custody. In the instant case the unit team recommended that the Petitioner spend the final _____ days in a RRC Placement. The Petitioner attempted, through the administrative processes, to have that recomendation reconsidered, but was unsuccessful.

Accordingly Petitioner proffers that Congress has delegated inmate placement authority to the BOP in two statutes; 18 U.S.C §§ 3621 (b) and 3624 (c). Under § 3621 (b), the BOP is delegated broad descretionary authority to determine the proper placement of inmates at the start of an inmate's prison term. Placement designations require consideration of five statutory factors;

1. the resources of the facility contemplated;
2. the nature and circumstances of the offense;
3. the history and characteristics of the prisoner;
4. any statement by the court that imposed the sentence,
   (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
   (B) recommending a type of penal or correctional facility as appropriate; and
5. any pertinent policy statement issued by the Sentencing commission pursuant to section 994 (a)(2) of title 28.

18 U.S.C. § 3621 (b). When considering the transfer of an inmate during the course of his imprisonment, the BOP must comsider

2

these same five factors. 18 U.S.C. § 3621 (b); Woodall v. Federal Bureau of Prisons, 432 F. 3d. 235, 247 (3rd Cir. 2005).

Under § 3624 (c), the BOP is required to evaluate an inmate for RRC placement near the end of an inmate's sentence. The Second Chance Act ammended § 3624 (c) by among other things, increasing an inmates's RRC eligibility from six to twelve months. The statute provides, in relevant part;

> (1) In general. - The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624 (c)(1). The Second Chance Act also requires the BOP to issue regulations which ensure that placement in a RRC is: (1) conducted in a manner consistent with § 3621 (b) of this title; (2) determined on an individual basis; and (3) sufficient duration to provide the greatest likelihood of successful reintegration back into the community iéd § 3624 (c)(6).

Additionally the Second Chance Act mandated that the BOP create a federal prisoner reentry initiative that, among other things, provides incentives for prisoners to participate in skills development programs. 42 U.S.C. § 17541 (a). The authorizing statute for the prisoner reentry initiative states, in relevant part;

> The Attorney General, in coordiantion with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative;
3

>(1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons......
>
>>(G) provide incentives for prisoner participation in skills development programs.
>
>(2) Incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include .....
>
>>(A) the maximum allowable period in a community confinement facility.

42 U.S.C. § 17541 (a).

The BOP has issued two memoranda addressing RRC's and the Second Chance Act. On April 14, 2008 a guidance memorandum provided for a seventeen to nineteen months review instead of the previous time frame of eleven to thirteen months. It further directed staff to conduct individualized assessments using the five factors § 3621 (b). Further it instructed staff that all inmates are eligible for a maximum of twelve months RRC time, but that placements for longer than six months require approval from the Regional Director.

The April 14 memorandum references Program Statement 7310.04, which provides that an inmate may be referred for up to 180 days, with placement beyond the 180 days highly unusual, and only possible with extraordinary justification and in such cases the warden must obtain approval from the Regional Director.

On October 21, 2008, the BOP published in the Federal Register

4

regulations, adopted to conform to the requirements of the Second Chance Act. See 73 Fed. Reg. 62,440, 62,441 (Oct 21, 2008). These regulations amend 28 C.F.R. §§ 570.20 - 570.22. Only sections 570.21 and .22 are relevant here.

570.21 TIME FRAMES

(a) Community confinement. Inamtes may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmates term of imprisonment, not to exceed twelve months.

(b) Home Detention. Inmates may be designated to home detention as a conditon of pre-release custody and programming during the final months of the inmates term of imprisonment, not to exceed the shorter of ten percent of the inmates term of imprisonment or six months.

570.22 DESIGNATION

Inmates will be considerd for pre-release community confinement in a manner consistent with 18 U"S.C" § 3621 (b), determined on an individual basis , and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time frames set forth in this part.

IT is incumbent that the court recgonize the time frames "Set forth". 1 Twelve months to Community confinement (RRC). 2. Up to six months in Home Detention. For a possible total of 18 months, depending on the length of sentence in only the time alloted for Home Detention. Lastly on Nov. 14, 2008, the BOP issued another guidance memorandum, which simply re-stated what was said in the two prior memorandums as pertinet to this arguement.

Petitioner contends and argues;

By instructing the unit teams that pre-release placement needs can usally be accommodated by a placement of six months or less, and by denying the Unit Team the discretion to recommend a placement longer than six months (without advanced written approval from the Regional Director), the April 14, 2008 and November 14, 2008 memoranda deny the Petitioner an individualized determination of his (RRC) placement, contrary to the Second Chance Act's amendments to Section 3624 (c).

Judge Sylvia H. Rambo of the U.S. District Court for the Middle District of Pennsylavania agrees. In her explanation and order in Martinez, Sep 3, 2209 in which she says; " Because the duration of the Petitioners 2009 placement was determined pursuant to these impermissible limitations, in (the aforementioned memorandas) the BOP abused its discretion in deciding that the Petitioners placement would only be five to six months." The instant case is no different and the BOP has once again abused its discretion.  The Judge goes onto say " That the abuse of discretion occured because a presumptive six finds no support in the text of the Second Chance Act." Further she ordered the BOP to reconsider the length of the Petitioners RRC placement taking into consideration the requirements of the Second Chance Act and the factors outlined in 18 U.S.C. § 3621 (b) and ............... DISREGARDING CONDITIONS IMPOSED BY EITHER THE APRIL 14, 2008 or NOVEMBER 14, 2008 MEMORANDUMS. "

Neither Memorandum is entitled to Chevron . U.S.A., Inc. v Natural Resources Def. Council, Inc, 467 U.S. 837 (1984). The memoranda were not embodied in a regulation or even a Program Statement,

and it is, as such BOP Program Statements are not entitled To Chevron deferencer. See Reno v Koray, 515 U.S. (they are merely internal agency guidelines that are not "subject to the rigors of law including public notice and comment, "BOP statements receive only "some attention under this standard, "the weight (Accorded to an administrative judgment. See Skidmore v. Swift and Co, 323 U.S.. Lastly the Judge states; "Given that the limitations contained in the memoranda find no support in the statutory statements and declines to defer to the criteria contained in them."

In Martinez, the BOP conceded that it did not separately consider § 17541 (a)(2)(A) in reaching its decision; instead, the BOP (Unit Team) penalized the Petitioner for his educational accomplishments, vocational skills, and participation in skills development programs. Further the BOP contends that it need not create an incentive of a 12 month placement in an RRC facility because of the language of § 17541 is discretionary and does not override its otherwise broad discretion in making placement decisions.

The Judge disagreed in part pertinet to the instant case, " The language clearly requires the establishment of an incentive program regarding a prisoner's participation in skills development programs, See § 17541 (a)(1)(g). Moreover, the fact that Congress specifically suggested one such incentive may be "the maximum allowable period in a community confinement facility" is illustrative of the types of incentives the BOP was to consider." Further the Judge said that "IT IS CLEAR" to this court that Congress intended that the BOP create incentives for a prisoner's participation in skills development programs under § 17541.

7

Moreover says the Judge "this consideration of incentives was clearly intended to be separate and distinct from the consideration under 18 U.S.C. § 3624 (c), otherwise it would have been superfluous for Congress to have created an entirely distinct statutory framework." The court then ordered the consideration by the BOP of the full twelve months RRC placement as an incentive under § 17541. separately from its determination under 18 U.S.C" § 3624 (c). The instant case is no different and the court must follow suit and order the same for the Petitioner.

The fianl order of the Judge in Martinez reads in part; The court directs the BOP to (1) reconsider the length of the Petitioners RRC placement in accordance with the Second Chance Act without regard to the limitations imposed by the April 14, 2008 and November 14, 2008 memoranda; and (2) consider separately and in good faith whether Petitioner should be awarded a 12 month RRC placement as an incentive for his participation in the BOP's skills development program. And lastly the court required the Unit Team , BOP to report back to the court within 45 days from the date of the order with the results of its reconsideration of the length of Petitioner's RRC placement.

Accordingly the Petitioner in Martinez received a full 12 month placement in an RRC.

See Krgeger v. Martinez, No 1:09 -cv- 1116, decided September 3, 2009, U.S. District Court for the MIddle District of Pennsylvania. In Krgeger v. Martinez the case was brought to the court pursuant to 28 U S.C. § 2241 . In the instant case it is brought pursuant to the APA by direction of this court............................

8

## LEGAL ARUGMENT AND AUTHORITIES

Pursuant to the Second Chance Act of 2007, 18 U.S.C. § 3624 (c) the Federal Bureau of Prisons is authorized to place prisoners in a residential re-entry center, or halfway house (CCC) for up to 12 months before the end of the prisoner's term of imprisonment. In this petition the Petitioner contends that the Bureau of Prisons is violating 18 U. S. C. § 3624 (c) by refusing to give the Petitioner the lawful individual review required by law under the statute and thus rendering a Bureau decision that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. When a party challenges an agency's decision or interpretation of a statute, the standard of review is governed by Chervon U.S.A., Inc. v. Natural Resources Defense Council, 467, U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2d. 694 (1984), under which the court first asks whether Congress has unambiguously expressed its intent in the statute. If it has, that is the interpretation that both the court and the agency must follow. But if the statute is ambiguous or has left open a "gap" on a particular issue, the agency's interpretation is entitled to deference, the level of which varies depending on its context. In Hendershot v. Scibana Lexis 20930 (2004) the court concluded that " a halfway house was "a correctional facility" to which the bureau could designate a prisoner as a general matter. The Bureau did not challenge this position. Second, the court decided that § 3624 (c) did not limit the Bureaus authority under § 3621 (b) to place prisoners in a halfway house. Rather, § 3624 (c) imposed an "obligation" on the bureau (the

9

Bureau of Prisons "shall" place prisoners in prerelease conditions at the end of their term of imprisonment. In other words, § 3624(c) is a limitation on the bureau's discretion, but the limitation is on the bureau's authority to refuse a prisoner's "Placement" in a halfway house, not on the authority to transfer him there. The court then ordered the bureau to consider the petitioner's request for earlier transfer to a halfway house. The court in the instant case can do no less. When this issue has been brought before the courts as in the instant case the overwhelming majority of courts granted the petitions, concluding that the bureau's policy conflicted with the unambiguous language of both § 3621 (b) and 3624 (c). See the following;

Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Zucker v. Menifee, No. 03CIV10077(RJH), 2004 U.S. Dist. LEXIS 724, 2004 WL 102779 (S.D.N.Y. Jan. 21, 2004); Grimaldi v. Menifee, No. 04CIV1340DABGWG, 2004 U.S. Dist. LEXIS 7455, 2004 WL 912099 (S.D.N.Y. April 29, 2004); Colton v. Ashcroft, 299 F. Supp. 2d 681, 687 (E.D. Ky. 2004); Estes v. Federal Bureau of Prisons, 273 F. Supp. 2d 1301 (S.D. Ala. 2003); Tipton v. Federal Bureau of Prisons, 262 F. Supp. 2d 633 (D. Md. 2003); Byrd v. Moore, 252 F. Supp. 2d 293 (W.D.N.C. 2003); Howard v. Ashcroft, 248 F. Supp. 2d 518 (M.D. La. 2003).

The Petitioner therefore request the court to order the respondent to "show cause" why the Petition should not be granted. See Pence v. Holinka, Warden, Lexis 89966, Sep. 2009. The contention of the Petitioner is the same as Pence in which Barbara Crabb, District Judge for the 7th Circuit stated the following;

> Under the Second Chance Act of 2007, 18 U.S.C. § 3624(c), the Federal Bureau of Prisons is authorized to place prisoners in a residential re-entry center, or halfway house, for up to 12 months before the end of the prisoner's term of imprisonment. In this petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, petitioner Donald Dale Pence contends that the bureau is violating § 3624(c) by refusing to transfer him to a halfway house until the last six months of his sentence. In an order dated August 14, 2009, I concluded that a petition under § 2241 is the proper way to bring this challenge because success on the claim would mean that petitioner is entitled to "a quantum change in [his] level of custody" at a particular time. Graham v. Broglin, 922 F.2d 379, 381 (7th Cir. 1991); see also Glaus v. Anderson, 408 F.3d 382, 387-88 (7th Cir. 2005) ("Graham outlines a clear distinction: a petitioner requests either a "quantum change in the level of custody," which must be addressed by habeas corpus, or "a different program or location or environment," which raises a civil rights claim). I directed respondent to show cause why the petition should not be granted.

In Richmond v. Scibana the court concluded that any challenge to the Bureau's interpretation would have to be brought under the Administrative Procedures Act, 5 U.S.C. § 702, 706. Accordingly the Petitioner brings his action under the Administrative Procedures Act. The Petitioner brings his Petition as a Motion for Injunctive Relief because at present the Petitioner is being harmed by his confinement at a Prison Camp instead of at the CCC. The harm stems from the fact he is not receiving the necessary time at the CCC to get the things necessary for his successful intagration back into society. Petitioner therefore seeks the courts intervention.

In determing whether the petitioner is entitled to injunctive relief..... the court must first decide whether he has shown some likelihood of success on the merits. In the instant case the merits relate to the correct interpretation of 18 U.S.C. §§ 3621 (b) and 3624 (c), which both involve the appropriate placement of federal prisoners. § 3621 (b) provides a five point consideration and authorizes the Bureau to designate any available penall or correctional facility that meets minimum standards of health and habitability established by the Bureau, within or without the judical district in which the person was convicted.

The Petitioner qualifies under all five points. The Bureau says that § 3624 (c) limits a prisoner's placement in a halfway house to the shorter of six months or the last 10 % of the prisoner's term of imprisonment. Petitioner says § 3621 (b) allows the bureau to place prisoners in a halfway house at "ANY POINT IN THEIR SENTENCE"

using the factors enumerated in that provision to determine the most appropriate placement, and that § 3624 (c) does nothing to limit that discretion.

In the instant case the Petitioner follows the instruction of Richmond and brings his challenge under the Administrative Procedures Act. Since Richmond the court of appeals has not considered a challenge to the bureau's 10% rule and none can be pointed to by any other party.

In Michael Tristano's case on which the Petitioner hangs his hat Lexis 28141 the Judge made the following findings;

"There are only two relevant differences between the case and Hendershot, 1. Hendershot was decided under § 2241 rather than the Administrative Procedures Act. (2) . After the Judge decided Hendershot, the bureau memorialized its "10%" rule in two regulations 28 CFR § 570.20 and 570.21. The question answered clearly by the Judge was; Do either of these differences suggest a different result?

With repect to the first difference, the answer is "Clearly NO". "Under the Administrative Procedures Act, courts are empowered to "COMPEL AGENCY ACTION UNLAWFULLY WITHHELD OR UNREASONABLE DELAYED" and "TO HOLD UNLAWFUL AND SET ASIDE AGENCY ACTIONS, FINDINGS AND CONCLUSIONS FOUND TO BE ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, OR OTHERWISE NOT IN ACCORDANCE WITH LAW." 5 U.S.C. $ 706. In the instant case, petitioner contends that the bureau unlawfully withheld consideration of a halfway house transfer by failing to act in accordance with 18 U.S.C. $ 3621 (b).

When a party challenges an agency's interpretation of a statute, the standard of review is governed by Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L. Ed. 2d. 694 (1984), under which the court first asks whether Congress has unambiguously expressed its intent in the statute. If it has that is the interpretation that both the court and the agency must follow. But if the statute is ambiguous or has left open a "gap" on a particular issue, the agency's interpretation is entitled to deference, the levelof which varies depending on its context. This is the standard of review that the court applied in Hendershot. The court concluded "THAT IT DID NOT NEED TO CONSIDER HOW MUCH DEFFERENCE IT OWED THE AGENCY BECAUSE THE STATUTES WERE UNAMBIGUOUS: THE BUREAU HAD AUTHORITY TO PLACE PRISONERS IN A HALFWAY HOUSE BEFORE THE FINAL 10 % OF THEIR SENTENCES. The Bureau has not shown that this conclusion was erroneous.

The second difference is more substatial; since the Bureau after Hendershot put its "10%" rule into two regulations, 28 CFR § 570.20 and 570.21. What was the purpose of the subpart 570.20 the court ask. Conclusion is that it provides the Bureau categorical exercise of discretion for designating inmate to community confinement. The term "Community confinement" includes Community Corrections Centers (CCC) Halfway houses.

Second question; In § 570.21, When will the bureau designate inmates to community confinement?
Answer: in statute, as part of pre release custody and programming during the last ten percent of the prison sentence being served, not to exceed six months. (Changed in the Second chance act to

12 Months)." The crux of the bureau's argument relating to these new regulations is that even if Congress gave the bureau discretion to place prisoners in halfway houses at any point in their sentence the bureau has the authority to exercise its discretion "categorically" through regulations that deny halfway house placement to anyone who has not yet reached the final 10 % of their sentence.

The Bureau has advanced this argument before each of the courts of appeal that has considered the validity of 28 CFR § 570.20 and 570.21. "EACH COURT HAS REJECTED IT"" Wedelstedt v. Wiley, 477 F. 3d. 1160, 1168, 2007 WL 512517 >7 10th Cir; Levine v. Apker 455F. ed. 71, 81 (2nd Cir 2006); Fults V Sanders, 442 F. 3d. 1088 1090-91 (8th Cir 2006); Woodall v. Federal Bureau of Prisons, 432 F. 3d. 244 (3rd Cir 2005). See also Perez v. Winn, 465 F. Supp 2d. 87 (D. Mass 2006); Ku v. Willinghan, 431, F. Supp 2d. 265 (d. Conn. 2006).

As explained by these courts, the bureau is not authorized to exercise its discretion categorically because § 3621 (b) instructs the bureau to make determinations individually, by considering each of the five factors enumerated in that statute.
The court in Tristano went onto say that the Bureaus argument that the above cited decisions are inconsistent with Lopez "is difficult to see how it could be so". In contrast with Chevron, Lopez, and § 3621 (b) does not include the criteria for making placement decisions, Congress has answered the precise question at issue, meaning that Lopez is not instructive. Even if a statutory scheme requires individualized determinations, Congress had not

provided the criteria the agency was required to use in making a decision. The statute simply requried the agency to make a determination "in each case". In $ 3621 (b) Congress lists the five factors the bureau must considerin making a placement decision, meaning that "CONGRESS HAS EXPRESSED ITS INTENT TO WITHOLD FROM THE BUREAU THE AUTHORITY TO DISREGARD THOSE FACTORS", some of which are not susceptible to genreal application. 18 U.S.C. § 3621 (b) requires the bureau to consider "the nature and circumstancer of the offense" and "the history and characteristics of the prisoner".

In short and conclusion of the Bureaus' arguments on the matter the court concluded in Tristano that; 1. Their first argument was a red herring because § 3621 (b) does require the bureau to make placements at a particular time, namely, when the prisoner is first incarcerated. Further, "every later rejection of a request for a transfer to a halfway house requres a determination that the prisoner's current placement is "appropriate and suitable under § 3621 (b) and thus triggers an obligation to consider the five factors listed in the statute. Under § 570.21, the bureau may consider only one factor, which is the amount of time left in the prisoner's term.

The second Bureau argument is stronger says the judge but "ULTIMATELY INPERSUASIVE". "The court went onto say; that § 570.20 and 570.21 do not expressly bar consideration of any of the five factors in making a placement decision; rather, the regulations remove from consideration a particular type of facility. The problem with this argument is that it could make any exercise of discretion meaningless. Under the bureau's view, it could enact regulations

prohibiting prisoners from being placed anywhere except maximum security facilities. Although such a rule would not expressly eliminate consideration of any of the five factors in choosing among different facilitites, there would be little point to the exercise. Thus the categorically elimination of any particular "available penal or correctional facility" does prohibit consideration of the five factors with respect to what type of facility. However, it is clear in § 3621 (b) that all available facilities should be considered including Community Correctional Facilities. In conclusion the Bureau cannot and did not defend its position and the court then becomes compelled to grant relief to all who seek it under the foregoing argument and to order the respondant to show cause why it should not grant the Petitioners petition for injunctive relief. If the court does not grant the Petitioners Motion for INjunctive Relief he will suffer irreparable harm. See Roland Machinery Co. v. Dresser Industries Inc. 749 F. 2d. 380. 386 (7th Cir. 1984). It is apparent that the issue before the court has been fully developed herein and in exsisting case law aforementioned and adjudicated and nothing remains to be challenged by the Bureau or its employees. It follows that the question is not without merit and the seventh Circuit needs to join the 10th, 2nd, and 3rd circuits as well as other courts in granting the petitioner the relief requested. With respect to any balance of harms the petitioner prevails due to the fact that the Bureau is not harmed at all by considering and ordering the transfer of the Petitioner to a halfway house forthwrightly.

FACTORS TO BE CONSDERED:
1. The resources of the facility contemplated.
2. The nature and circumstance of the offense.
3. History and characteristics of the prisoner.
4. Any statement by the court that imposed the sentence.
5. Any pertinent policy statement issued by the sentencing commission such as 18 U.S.C. § 3621 (b). These statutory provisions are echoed in the BOP's promulgated rules set forth at 28 CFR § 570.20 and .21.

18 U.S.C. § 3624 (c), clearly states that the "Bureau may designate any available penal or correctional facility the Bureau determines to be appropriate and suitable. A CCC meets the definition of a "penal or correctional facility". The Petitioner is better served in his rehabilitation needs for re-entry into society at a CCC where he can accomplish what he needs to for a successful intagration back to society which are not afforded him at his current placement in the Camp.

It follows then that the Bureau is not restricted by § 3624(c), in designating a CCC for more than the "last 10 % of the term", Or more than six months. See Bureau policy 7310.04. The Petitioner is not challenging the policy behind the BOP's decision, nor does he claim that the BOP is using incorrect rules but he challenge's the interpetation... and application of those rules. See Woods v. Wilson Case No. 09-cv-0749, 2009 U.S. Dist. Lexis 73864 (N.D. III, 2009)

INDIVIDUAL EVALUATION PURSUANT TO 5 FACTOR REVIEW
1. Petitioner has never been convicted of a federal or state sex offense, crime of violence, or use of a firearm;

17

2. Petitioner has had no escape or attempted escape from the BOP.

3. Petitioner has no knowledge of any risk factors and is not a danger to the general public upon release to a CCC.

4. Petitioner has never received an incident report which would hinder his placement in a CCC.

5. Petitioner has made and continues to make satisfactory progress toward completing all requred Unit Team recommendations and programs.

6. Petitioner has no known Public Safety Factors (PSF).

7. The resources of the halfway house are available to the Petitioner.

8. The offense with which the Petitioner was charaged does not prevent his placement into a halfway house.

9. The court imposed no statement restricting him from placement into a halfway house.

10. Pertient policy statements are discussed in full in the foregoing legal argument, and support his Petition.

11. The history and characteristics of the Petitioner are well demonstrated in his "Inmate Evaluation" attachment A.

## IN SUPPORT OF THE MOTION

Once the Petitioner was sentenced to 18 months term of imprisonment, he was committed to BOP's custody until the expiration of that term. See 18 U.S.C. § 3621 (a). BOP has the authority to transfer an inmate to any penal or correctional facility at any time. § 3621 (b). As to placement in community correctional facilities (halfway house), the law provides;

(c) Prerelease custody-

(1) in general - The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a

term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner has a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Suchconditions may include a community correctional facility.

(2) Home confinement authority - Th authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. 18 U.S.C. § 3624 (c). One award of time does not diminish the other. So in effect the law allows for 12 months halfway house (CCC and the shorter of 10 % or six months of their aggregrate sentence to home confinement. To the extent that the BOP is mandated to consider "any statement by the court that imposed the sentence... recommending a type of penal or correctional facility as appropriate" is designating Petitioners placement of imprisonment, See § 3621 (b)(4)(B), the Petitioner seeks an order from the court to grant him the maximum time permitted (12 months) in halfway house.

## CONCLUSION

Pursuant to 18 § 17541 (a)(2)(A) Petitioner has demonstrated he is deserving of the incentives offered in the statute having participated in reentry and skills development programs and thus deserving of the maximum allowable period in a community confinement facility. Further recent rulings in the Article 3 court of the District of Hawaii, at Honolulu set a clear precedent for the court to follow. In U.S. v. Syed Qadri, Lexis 38716, Cr 06-00469 LEK,

decided March 15, 2007, Judge Leslie E. Kobayashi ruled for the motion requesting a judicial recommendation from the defendant, granting the defendant the maximum time permitted for half way house of the full 12 months. The Petitioner in the instant case is no less deserving of such a order from this court, based on his record, presented herein and demonstrated by the attachments. The Petitioner has a strong willingness and desire to reintegrate back into society as a positive contributing member.

## RELIEF SOUGHT

WHEREFORE the above considered, Petitioner ask this Honorable Court to grant him his Petition for Injunctive Relief, ordering the current decision of the BOP Unit Team to be set aside and replaced with 12 months placement into halfway house and/or......... placement into home confinement. Further that the court recognize in its order that the placement decision fell far short of the requirement due the Petitioner under the law, embodied in and pursuant to 18 U.S.C. § 3621 (b), 3624 (c) and CFR 570.20, 570.21 and in so doing the BOP abused its discretion granted in these statutes. Lastly that the court order the BOP to act forthwrightly to prevent irreputable harm.

Respectfully submitted,

*Christopher Steward 18319-033*

Christopher Steward 18319-033

Federal Prison Camp

P.O. Box 33

Terre Haute, IN 47808

Dated this 11 day of September, 2017